| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:07 CV 254 |
| | ) | |
| JONATHAN L. BOWER, II, | ) | |
| MICHAEL BOWER AND ANNE BOWER | ) | |
| THE CHURCH ON FIRE f/k/a | ) | |
| NEW HOPE WORSHIP CENTER | ) | |
| GLB b/n/f ANNA BUTLER,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is a declaratory judgment action filed by American Family Mutual Insurance Company

("American Family") against its insureds, Michael and Anne Bower ("the Bowers") and their son,

Jonathan Bower ("Jonathan"). The sole issue in this case is whether American Family's

homeowners policies provide coverage and a duty to defend for state law claims by Gabrielle Butler

("Butler") arising from an alleged sexual molestation by Jonathan, on the Bowers' premises, while

Butler was a minor child.

Presently before the court is American Family's Second Motion for Summary Judgment filed

on March 12, 2010. The Bowers responded on June 25, 2010 to which American Family replied on

---

[1]The original complaint listed Jonathan Bower, II as a defendant. On September 29, 2008, the court GRANTED American Family's request for a default judgment against Jonathan Bower, II. Subsequently, American Family filed Second Amended and Third Amended Complaints wherein they did not list Jonathan Bower, II as a defendant. However, in doing so, American Family altered the caption by removing Jonathan Bower, II. The proper caption remains that which appeared on the original complaint in this action.

August 2, 2010. Butler filed a response as well wherein she adopted the Bowers' position on all issues in the case. For the following reasons, the Second Motion for Summary Judgment will be GRANTED in part and DENIED in part.

## **FACTUAL BACKGROUND**

American Family[2] issued six Gold Star Special Deluxe homeowners policies ("the Policies") to the Bowers covering the premises at 5210 Timbers End Place, Fort Wayne, Indiana for the period of August 2, 2000 through January 24, 2005. During that time, it is undisputed that Jonathan was an additional insured on the policies. American Family did not provide insurance coverage to the Church until 2005.

In 2003 and 2004, Jonathan is alleged to have molested Gabrielle Butler, then a minor, by having sexual intercourse with her on at least five or six occasions, at 5210 Timbers End Place, Fort Wayne, Indiana. Jonathan eventually pled guilty to three counts of child molesting. Butler has filed a civil suit against Jonathan, the Bowers, and The Church of Fire a/k/a The New Hope Worship Center ("the Church") in state court seeking damages for bodily injury, emotional distress, and punitive damages arising from the conduct of Jonathan. With respect to the Bowers, she asserts that they had actual knowledge of the assaults but did nothing to prevent them. Alternatively, she asserts that they knew or should have known of Jonathan's deviate sexual behavior and/or the sexual assaults but did not prevent them. As part of this latter argument, Butler asserts that the Bowers assumed the role of *in loco parentis* by supervising her and were negligent in their role. Butler also

---

[2]American Family is a mutual insurance company organized under Wisconsin law with its principal place of business in Madison, Wisconsin. The Bowers are domiciled in Indiana; Butler is domiciled in Arizona. The Church on Fire d/b/a New Hope Worship Center is an Indiana corporation with its principal place of business in Allen County, Indiana. The amount in controversy is alleged to be in excess of $75,000, exclusive of interests and costs.

asserts claims against Michael Bower in his capacity as the Pastor of the Church asserting that he knew or should have known of the sexual deviate behavior of Jonathan. She asserts claims of negligent supervision, hiring (she alleges Jonathan was a Church employee), and retention.

In light of these assertions, the Bowers' sought coverage under and a defense from the Policies issued by American Family.[3] American Family asserts a host of defenses to the Bowers's assertions that Butler's claims are covered under the Policies and therefore, American Family owes a duty to defend them in the underlying suit. American Family first contends that its Policies do not provide coverage for Butler's claims because there was no "occurrence" sufficient to trigger the coverage provisions. Alternatively, American Family asserts that even if there was an "occurrence," the policies have several exclusions that operate to preclude coverage, and therefore, a duty to defend, as to Michael and Anne Bower for the lawsuit filed by Butler. These include: (1) an exclusion for bodily injury arising out of any actual or alleged sexual molestation; (2) an exclusion for bodily injury arising out of violation of any criminal law for which violation any insured is convicted; (3) an exclusion for bodily injury caused intentionally by any insured even if the actual bodily injury is different than that which was expected or intended from the standpoint of any insured; (4) an exclusion for bodily injury to any insured; (5) an exclusion for bodily injury arising out of business pursuits; (6) an exclusion for bodily injury arising out of the rendering or failing to render professional services; (7) an exclusion for bodily injury arising out of any act or omission

---

[3]A default judgment has been entered against Jonathan in this lawsuit as to the original complaint and thus, this court has entered a declaration that the policies do not provide coverage as to any claims by Butler against Jonathan and American Family has no duty to defend as to Jonathan. Further, in the briefs, the remaining defendants do not dispute the absence of coverage or defense obligation by American Family as to Jonathan. For this reason, the Court's opinion is limited solely to whether there is a duty to defend owed to the Bowers and the Church on Fire.

occurring on any premises controlled by any insured other than an insured premises; (8) an exclusion for punitive damages. After a review of the applicable standard, each of these arguments shall be examined *seriatim.*

## **Applicable Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## **DISCUSSION**

Insurance policies typically impose dual obligations on the insurer – the duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages. Because an insurance policy is a contract for insurance, they are governed by the same rules of construction as other contracts. *Briles v. Wausau Ins. Cos.,* 858 N.E.2d 208, 213 (Ind.Ct.App.2006) (citing *Gregg v. Cooper,* 812 N.E.2d 210, 215 (Ind.Ct.App.2004). As with other contracts, their interpretation is

4

a question of law. *Briles,* 858 N.E.2d at 213.

When interpreting an insurance policy, the goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Id.* In reviewing policy terms, the court construes them "from the perspective of an ordinary policyholder of average intelligence." *Allgood v. Meridian Sec.Ins.Co.,* 836 N.E.2d 243, 246-47 (quoting *Burkett v. Am. Family Ins. Group,* 737 N.E.2d 447, 452 (Ind.Ct.App.2000)). Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, courts construe insurance policies strictly against the insurer. *See Fidelity and Deposit Co. of Md. v. Pettis Dry Goods Co.,* 207 Ind. 38, 42 (1934) ( "any doubts or ambiguities must be resolved most strongly against" the insurer).[4] This is particularly the case where a policy excludes coverage. *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945 (Ind.1996). At the same time, interpretation should harmonize the policy's provisions rather than place its provisions in conflict. *Allgood,* 836 N.E.2d at 247.

An insurer's duty to defend its insureds against suit is broader than its coverage liability or duty to indemnify. *Trisler v. Indiana Ins. Co.* 575 N.E.2d 1021, 1023 (Ind.Ct.App. 1991). The insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation. *Id.* If the pleadings disclose that a claim is clearly excluded under the policy, no defense is required. *Id.*

## I.       Coverage

---

[4]Strict construction against the insurer derives from the disparity in bargaining power characteristic of parties to insurance contracts. *Wagner v. Yates,* 912 N.E.2d 805, 810 (Ind. 2009). "The insurance companies write the policies; we buy their forms or we do not buy insurance." *Id.* at 811 (quoting *Kiger,* 662 N.E.2d at 947). Nevertheless, we enforce limits on coverage where the policy unambiguously favors the insurer's interpretation.

American Family asserts that there is no coverage under the Policies that would set in motion its duty to defend the Bowers in the underlying suit by Butler. Coverage under the Policies is triggered by an "occurrence." Specifically, the relevant portion of the insuring agreements provide as follows:

> We will pay, up to our limit, compensatory damages for which any **insured** is legally liable because of **bodily injury** or **property damage** caused by an **occurrence** covered by this policy.

The Policies further contain a defense provision which reads:

> If a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this policy applies, we will provide a defense...

Bodily injury is defined in the Policies as "bodily harm, sickness or disease." An "occurrence" is defined as "an accident, including exposure to conditions which results, during the policy period, in....bodily injury or ...property damage." The policy does not further define "accident" but, in the context of insurance coverage, Indiana law states that "an accident means an unexpected happening without an intention or design." *Indiana Farmers Mut. Ins. Co. v. North Vernon Drop Forge, Inc.* 917 N.E.2d 1258, 1271 (Ind. Ct. App. 2009) (quoting *Terre Haute First Nat'l Bank,* 634 N.E.2d at 1336).

According to American Family, insurance coverage is not authorized for Michael and Anne Bower because no "occurrence" i.e., no accident, occurred. American Family argues that the sexual molestation of Butler by Jonathan was not accidental and thus, any injuries flowing to Butler as a result of Jonathan's conduct do not fall within the scope of the policy's insuring clause.

In response, the Bowers do not dispute that Jonathan's conduct was not accidental; instead,

they assert that there exist separate allegations in the underlying lawsuit against them alleging, in part, their negligence. Claims of negligence, they argue, are an "accident" for which there would be coverage. The Bowers also point to the fact that the Policies contain a severability clause which reads: "this insurance applies separately to each insured" (Docket #86, Exh. B, p. 15).[5] Given this clause, the Bowers argue that whether an "accident" occurred should be examined individually from the perspective of each insured and when looked at separately from the acts of Jonathan they clearly did not intend or expect the bodily injury to Butler to occur.

Both parties cite to *Wayne Township Board of School Commissioners v. Indiana Insurance Company*, 650 N.E.2d 1205 (Ind. Ct. App. 1995), but reach opposite conclusions on how the case applies to the facts here. In *Wayne*, an insured school sought a declaratory judgment that the general liability policy issued by the defendant insurance company covered the negligence claims against the school arising from the principal's sexual molestation of a student. In the underlying suit, the child who had been molested sought to recover for, among other things, the emotional trauma she suffered as a result of the molestation. The insurer denied coverage contending that the sexual molestation was not an "occurrence" under the policy provision and the victim did not suffer a "bodily injury" within the meaning of the policy. The policy defined an "occurrence" as "an accident....which results in bodily injury or property damage **neither expected nor intended from the standpoint of the insured**." (Emphasis added). The policy, like the ones here, further contained a severability provision stating that "the insurance afforded applies separately to each insured against whom claim is made or suit is brought..." Based on its interpretation of these two

---

[5] A similar provision can be found in the definition sections of the Policies "[e]ach person described [as an insured] is a separate insured under this policy." (Docket #86-3, p. 5)

provisions, the Indiana Court of Appeals concluded that the claims against the school must be separated from the acts of the principal and thus, the alleged negligence of the school constituted an "occurrence" under the policy especially when viewed from the standpoint of the school (i.e., the insured). See also, *Safeco Ins. Co. of Am. v. White* , 913 N.E.2d 426, 432 (Ohio, 2009) ("we hold that when a liability insurance policy defines an "occurrence" as an "accident," a negligent act committed by an insured that is predicated on the commission of an intentional tort by another person, e.g., negligent hiring or negligent supervision, qualifies as an "occurrence.").

To support its position that there has been no "occurrence," American Family is quick to assert that its Policies do not contain what it considers the "key" language from *Wayne*, that is the language that an "occurrence" is measured by whether the bodily injury was "expected or intended from the standpoint of the insured." Such policy language, it agrees, has been construed to exclude coverage only for intended injuries as was the case in *Wayne*. But here, the Policies provide only that an "occurrence" is an "accident ... which results, during the policy period, in....bodily injury ..." The policy does not define "accident" nor, as American Family points out, does it affirmatively require the Court to look separately to the perspective of each insured in determining whether there has been an "occurrence." Thus, American Family argues that because it is undisputed that Jonathan's actions were not accidental, the claims against the Bowers, even the claim of negligence, do not require it to defend the claims.

American Family's argument, however, clearly overlooks the impact of the severability provision in the insuring agreement on the facts here. Severability clauses are commonly used to provide each insured with separate coverage, as if each were separately insured with a distinct policy, subject of course to the policy's liability limits. Thus, if the court looks to the alleged

conduct of the Bowers as separate from the conduct of Jonathan and further examines the allegations in Butler's complaint that their negligence caused bodily injury, it is clear that their alleged role falls within the concept of "accident" upon which an "occurrence" is defined in the American Family insuring agreement. Indeed, there is no evidence that the Bowers intended or expected their son to molest Butler.

This conclusion is bolstered by the decision in *Wayne* where the court determined the severability agreement to be the key to its conclusion that an "accident" had occurred with respect to the co-insured parties:

> Indiana Insurance seeks to apply the insurance to the school and Barger jointly, in an effort to impute the intent the law infers to Barger to the school as well. But, the plain and unambiguous language of the policy requires that claims against each insured be treated separately. The child was molested by Barger, who is an insured separate from the school under the Indiana Insurance policy. The inference of an intent to injure S.M. cannot be imputed to the school.
>
> S.M. has alleged that the school acted negligently. There is no evidence demonstrating that any unreasonable conduct on the part of the school was not accidental. And, we cannot impute Barger's intent to injure S.M. to the school. With respect to the school, S.M. has alleged that her injury arises from an occurrence.

*Wayne Tp. Bd. of School Com'rs,* 650 N.E.2d at 1209.

Moreover, even if the court, as American Family has, ignored the severability provision and focused solely on whether an "accident" had occurred, the basic tenets of insurance contract construction would require the court to conclude that an "accident" within the meaning of "occurrence" happened. Indeed, the lack of any definition of an "accident" in the Policies leaves a crucial term undefined. And, while this fact alone does not necessarily make the term ambiguous, *see Wagner v. Yates,* 912 N.E.2d 805, 810 (Ind. 2009), an ambiguity is affirmatively

established if a provision is susceptible to more than one reasonable interpretation. *Id.* (citing *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997).

Indiana courts, as set out earlier, define an accident as "an unexpected happening without an intention or design." *Indiana Farmers Mut. Ins. Co.* 917 N.E.2d at1271. Here, depending upon which insured's perspective is considered, the conclusion of whether an "accident" happened is susceptible to differing reasonable interpretations. When measured from Jonathan's perspective (he's an insured remember), no one has attempted to argue, that no "unexpected happening without intent to injure" occurred when Jonathan molested Butler. Indeed, Indiana law forecloses such a position, see *Wiseman v. Leming*, 574 N.E.2d 327 (Ind. Ct. App. 1991) (intent to injure inferred when an insured has engaged in sexual misconduct with a minor), and thus, his conduct clearly would not be an accident. And, as this court has already noted, there is nothing before the court to suggest that by allegedly failing to supervise Butler, the Bowers intended and expected the injury from their son to Butler. Thus, when measured from their perspective, an "accident" upon which "occurrence" is defined in the insuring agreement occurred.

Because whether an "accident" has occurred may be examined from differing standpoints there are reasonable conflicting interpretations. For this reason, the court is required to construe the ambiguity strictly against the insurer and in favor of coverage. *See Bradshaw v. Chandler,* 916 N.E.2d 163, 166 (Ind.2009). Accordingly, the court is persuaded that the intentions or expectations of the negligent insured control the determination of whether an "occurrence" implicating coverage arises in a particular case. Thus, in the present case the allegations of negligence against the Bowers reveal that an "occurrence" implicating American Family's duty

to defend has arisen.[6] American Family's Second Motion for Summary Judgment is therefore DENIED.

## II. Exclusions

American Family asserts that even if an "occurrence" under the insuring clause creates coverage, a host of exclusion provisions apply, all of which preclude coverage for the Bowers in the underlying state suit.

Generally, "insurers are free to limit coverage; however, all exceptions, limitations and exclusions must be plainly expressed. An exclusionary clause must clearly and unmistakably express the particular act or omission that will bring the exclusion into play." *Wells v. Auto Owners Ins. Co.,* 864 N.E.2d 356, 358 (Ind.Ct.App.2007) (citing *Jackson v. Jones,* 804 N.E.2d 155, 158 (Ind.Ct.App.2004)). The court now examines each of the exclusions.

### A. Sexual Molestation, Intentional Acts, and Violation of Law Exclusions

In Count II of her amended state court complaint, Butler asserts that the Bowers were aware of the danger from Jonathan but did not intervene to stop the molestation. American Family asserts that by virtue of these allegations, the Bowers's claim is excluded under one or all of the following exclusions: (1) the sexual molestation exclusion; (2) the intentional acts exclusion; and (3) the violation of law exclusion. Because each of these exclusions beg the question of whether

---

[6]Other courts addressing this issue have imputed the words "from the standpoint of the insured" into the definition of an "accident" where the policy does not contain such a provision, *see Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 719 (Miss.2004) (adding the phrase "from the standpoint of the insured" to the definition of "accident."), or have resorted to the common meaning of "accident" and held that whether there is an accident must be evaluated from the standpoint of the insured. *Allstate Ins. Co. v. McCarn*, 645 N.W.2d 20, 23 (Mich. 2002). Moreover in *Safeco Ins. Co,* the Ohio Supreme Court recently reaffirmed its prior holdings that "liability coverage hinges on whether the act is intentional from the perspective of the person seeking coverage...the intentions of the molester are immaterial to determining whether the allegedly negligent party has coverage." *Safeco*, 913 N.E. 2d at 432.

they apply with the same force to innocent co-insureds as they would to a perpetrator, the court

considers them in tandem.

All three exclusion preclude claims for bodily injury arising out of the particular excluded

act:

### Section II - Exclusions

| | | |
|---|---|---|
| 1. | **Abuse.** | **We** will not cover **bodily injury** or **property damage** arising out of or resulting from any **actual or alleged:** |
| | | **a.**     **sexual molestation or contact**; ... |
| 10. | **Intentional Injury**. | **We** will not cover **bodily injury** or **property damage** caused intentionally by or at the direction of any **insured** even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of any **insured.** |
| 17. | **Violation of Law.** | **We** will not cover **bodily injury** or **property damage** arising out of: |
| | | a.     violation of any criminal law for which any **insured** is convicted |

According to American Family, there is no question that Butler's claims for battery and

emotional distress arise from an intentional act of sexual molestation by Jonathan, or, alternatively,

from Jonathan's criminal act.  Thus,  American Family seizes upon these undisputed facts to assert

that because Butler's claims against Jonathan are clearly foreclosed by the above exclusions, so too,

are her claims against the Bowers.

In response, the Bowers first point to evidentiary materials from the state court case which

they argue demonstrate that the undisputed evidence is that the Bowers were unaware of the sexual

molestation occurring to Butler.  (*See* Response Brief, p. 2 and deposition citations therein).[7]

According to the deposition testimony cited, both Butler and Jonathan indicate that the Bowers had

no actual knowledge of the molestation.  Thus, the Bowers contend that the factual underpinnings

of the claim demonstrate that the case is solely one of negligent supervision. Because the claims

against them are ones of negligence and the parties agree that they did not commit a criminal act, the

Bowers assert there is an open question of Indiana law as to whether they are precluded by any of the

above three exclusions.

American Family agrees that there is no direct Indiana case addressing the question of

whether any of the above clauses excludes coverage for an innocent co-insured.  Other jurisdictions

addressing the issue have come to opposing views.[8]  Compare *Hingham Mut. Fire Ins. Co. v. Smith*,

865 N.E.2d 1168 (Mass.App. 2007); *Philbrick v. Liberty Mut. Fire Ins. Co.* 934 A.2d 582, 585

(N.H.,2007); *American Commerce Ins. Co. v. Porto,* 811 A.2d 1185, 1196 (R.I. 2002) ("if the alleged

sexual molestation is a cause of the claimed bodily injuries, then the existence of other alleged

negligence claims and proximate causes is of no moment-the bodily injuries alleged are causally

connected to or 'arise out of' the sexual molestation, and are thereby excluded from coverage");

---

[7]The insurer may go beyond the face of the complaint and refuse to defend based upon the factual underpinnings of the claims against its insured. *Cincinnati Ins. Co. v. Mallon*. 409 N.E.2d 1100, 1105 (Ind. Ct.App. 1980).  "Accordingly, in evaluating the factual basis of a claim and the insurer's concomitant duty to defend, this court may properly consider the evidentiary materials offered by the parties to show coverage." *Trisler,* 575 N.E.2d at 1023. When the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend. *Mallon,* 409 N.E.2d at 1105 (citing 7C John A. Appleman, Insurance Law and Practice, § 4683). "It is the nature of the claim and not its merits that determines the duty to defend." *Terre Haute First National Bank v. Pac. Employers Ins.Co.*, 634 N.E.2d 1336, 1339 (Ind.Ct.App. 1993); *Mallon,* 409 N.E.2d at 1105.

[8]The court acknowledges that not each of these cases specifically deals with all three exclusions in tandem as the undersigned has done here.  However, what the cases do demonstrate is that insurers often rely upon a combination of these exclusions, as here, and present similar arguments as the ones presented here.

*Allstate Ins. Co. v. Bates,* 185 F.Supp.2d 607, 613 (E.D.N.C.2000) (excluding coverage for negligent co-insureds reasoning that "[w]ithout the molestation there would be no injury and thus, no basis for the negligence claim"); with *U.S. Fidelity & Guar. Co. v. Open Sesame Child Care Ctr.*, 819 F.Supp. 756, 760 (N.D.Ill.1993) ("In refusing to separate the employer's alleged negligence from the employee's intentional conduct, [other] courts impermissibly ignored the employer's independent acts which gave rise to the alleged tort"); *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 842 F.Supp 1151, 1159-1165 ("an insurer must provide coverage and a legal defense to an insured where a complaint alleges that an employer was negligent in hiring and supervision of an employee who subsequently committed an intentional tort. An insurance policy would require an exceedingly precise exclusionary clause to avoid that fundamental principle, and there is no such clause in the instant case"); *St. Paul Fire & Marine Insurance Co. v. Schrum,* 149 F.3d 878 (8th Cir. 1998); *Doe v. Shaffer*, 738 N.E.2d 1243 (Ohio 2000), *C.P. v. Allstate Ins. Co.*, 996 P.2d 1216, 1225-1226 (Alaska 2000) ("From the perspective of insureds whose acts are alleged to have negligently, but not criminally or intentionally, been a cause of a claimant's injury, these exclusions do not apply to the negligence claims against them"); and *Safeco Insurance*, 913 N.E.2d at 434-436 (concluding that because the insured were held separately liable for their own actions, "which were neither intentional nor illegal;" the injuries they caused were distinct from the injuries caused by another insured's intentional and illegal acts. Therefore, "the intentional-act and illegal-act policy exclusions do not apply to the negligence claims."); *Frankenmuth Mut. Ins. Co. v. Williams,* 690 N.E.2d 675, 678-680 (the intentional-act exclusion does not apply to negligent co-insured's conduct).

In examining these sets of cases there appear to be two lines of reasoning applied by the various courts. In cases where courts determine that the sexual molestation or intentional act

exclusions preclude coverage for all related claims, the courts have reasoned that without the molestation, the allegations of negligence would not have surfaced and thus, the injury would not have occurred. Thus, these courts conclude that the injuries from the negligent conduct related to an intentional tort are inextricably intertwined with the injuries arising from the intentional or illegal act. *See Safeco Ins.*, 913 N.E.2d at 435 (discussing opposing view).

The line of authority reaching the opposite conclusion reasons that negligent supervision and negligent entrustment torts are separate in nature and create distinct injuries from the molestation itself. In *Frankenmuth,* the Indiana Supreme Court concluded that the insurer could not rely on the intentional acts exclusion because the insured's negligence caused a separate injury from the intentional act of another insured, i.e., the negligent supervision injured the plaintiff by creating an increased exposure to the risk of molestation which "must be considered separately from the injuries resulting from the molestation itself." *Frankenmuth*, 690 N.E.2d at 679. *See also*, *U*.S. Fidelity & Guar. Co., 819 F.Supp. at 760 ("In refusing to separate the employer's alleged negligence from the employee's intentional conduct, [other] courts impermissibly ignored the employer's independent acts which gave rise to the alleged tort"); *St. Paul Fire & Marine Ins.,* 149 F.3d at 880-881 (applying Missouri law and noting that the intentional tort was "merely incidental" to the negligent-supervision claim, making the negligence a separate and nonexcluded cause of the victim's injuries); *Bd. of Public Edn. of the School Dist. of Pittsburgh v. Natl. Union Fire Ins. Co.* 709 A.2d 910, 916-917 (Pa.Super 1998) ("Where it is alleged that negligence allowed a crime to occur, does the claim against the negligent arise from the negligence or from the criminality? We believe it is the former").

In light of the absence of controlling Indiana authority, American Family attempts to circumvent the issue of whether the Bowers can be liable despite their status as innocent co-insured

altogether by making an alternative argument that the exclusions for intentional and criminal acts apply to acts by "any insured." Since Jonathan was an insured under the Policies, they contend that any intentional or criminal acts by him exclude coverage for his parents. It follows then, that if this language in the intentional or criminal acts exclusions applies to preclude coverage, it matters not whether the Bowers are innocent co-insureds under any of the exclusions.

It is true that a review of the intentional acts and violation of law exclusions in the Policies state that the Policies do not cover "bodily injury...caused intentionally by ....any insured...even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of **any insured**' or "bodily injury ... arising out of ...violation of any criminal law for which *any* insured is convicted." (See Policy Exclusions, #s 10, 17). Yet, as the Bowers point out, there also exists in the Policies the severability clause which requires each insured to be considered separately. Thus, they contend that the severability clause cannot be reconciled with the "any insured" language of the intentional and criminal acts exclusions when the severability clause demands that the insurance applies separately to each insured.

As with the initial inquiry as to whether negligent acts of co-insureds are barred by the exclusions, there is no direct Indiana law discussing this issue. Moreover, there is also a split of authority in other jurisdictions as to whether the language "any insured" American Family utilizes throughout its policies bars the Bowers from a defense when the policy also contains a severability provision. **Compare** *McCauley Enters. v. N.H. Ins. Co.,* 716 F.Supp. 718, 721 (D.Conn.1989) (holding that an exclusion referencing "any insured" barred recovery of losses by an innocent co-insured); *Michael Carbone, Inc. v. Gen. Accident Ins. Co.,* 937 F.Supp. 413, 423 (E.D.Pa.1996) (holding that an exclusion phrased "any insured" precluded coverage despite a severability clause);

*Chacon v. Am. Family Mut. Ins. Co.,* 788 P.2d 748, 752 (Colo.1990) (holding that an exclusion for the intentional acts of "any insured" precluded a negligent supervision claim despite a severability clause); *Oaks v. Dupuy,* 653 So.2d 165, 168 (La.Ct.App.1995) (concluding that a severability clause did not alter the scope of an exclusion clause phrased in terms of "any insured"); *Am. Family Mut. Ins. Co. v. Copeland-Williams,* 941 S.W.2d 625, 629 (Mo.Ct.App.1997) ("The use of the phrase 'any insured' makes the exclusionary clause unambiguous even in light of the severability clause."); *Am. Family Mut. Ins. Co. v. Moore,* 912 S.W.2d 531, 533-35 (Mo.Ct.App.1995) (holding that a severability clause did not negate an exclusion for damages "arising out of business pursuits of any insured ... by an insured"); *Northwest G.F. Mut. Ins. Co. v. Norgard,* 518 N.W.2d 179, 180, 184 (N.D.1994) (holding that an exclusion for sexual molestation by "an insured, an insured's employee or any other person involved" precluded coverage for a negligent supervision claim against another insured, notwithstanding a severability clause); *Great Cent. Ins. Co. v. Roemmich,* 291 N.W.2d 772, 774 (S.D.1980) (finding no ambiguity in the term "any insured" in an exclusionary clause, even when interpreted with a severability of insurance provision); *Caroff v. Farmers Ins. Co. of Wash.,* 989 P.2d 1233, 1237 (Wash. App.1999) (holding that exclusions of coverage for injury arising out of child molestation by "any insured" precluded coverage despite general severability clauses); *Taryn E.F. v. Joshua M.C.,* 505 N.W.2d 418, 421 (Wis.App.1993) (holding that an exclusionary clause referencing "any insured" precluded coverage even when read with a severability clause); **with** *Am. Ins. Co. v. AV & S,* 145 F.3d 1224, 1229 (10th Cir.1998) ("[T]he term 'any insured' in an exclusion clause in a policy that also contains a severability clause does not exclude coverage for all insureds when only one insured is at fault."); *Transp. Indem. Co. v. Wyatt,* 417 So.2d 568, 571 (Ala.1982) (applying a severability clause and finding the term "any insured" in an exclusion ambiguous);

*Premier Ins. Co. v. Adams,* 632 So.2d 1054, 1057 (Fla.Dist.Ct.App.1994) (holding that a severability clause limited an exclusion for intentional acts by "any insured" to exclude coverage only for the insured who intentionally caused the injury); *Brumley v. Lee,* 963 P.2d 1224, 1228 (Kan. 1998) (holding that a severability clause afforded each insured his or her own policy despite an exclusionary intentional act clause referencing "any insured"); *Worcester Mut. Ins. Co. v. Marnell,* 496 N.E.2d 158, 161 (Mass.1986) (interpreting a severability clause to nullify a motor vehicle exclusion despite the exclusion's "any insured" language); *Am. Nat'l Fire Ins. Co. v. Estate of Fournelle,* 472 N.W.2d 292, 295 (Minn.1991) (stating that a severability clause provided for separate coverage to named insureds despite a household exclusion applying to "any insured").

Under the doctrine of *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938), a federal court sitting in diversity is bound by state substantive law. Where, as here, the parties assert there is no controlling state law, the court has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 165 F.3d 1087, 1090 (7th Cir.1999).[9]

Here, the Court's review of the cases demonstrates that the Indiana Supreme Court has provided some guidance (albeit not on facts identical to the present case but not far removed), as to Indiana's position on issues such as the one in this case. In *Frankenmuth Mutual*, a minor child was

---

[9]The undersigned contemplated at great length certifying these issues to the Indiana Supreme Court. However, pursuant to Indiana Appellate Rule 64, a federal district court may certify a question of Indiana law to the Indiana Supreme Court when "it appears to the federal court that a proceeding presents an issue of state law that is *determinative of the case* and on which there is no clear controlling Indiana precedent." [emphasis added]. Here, because American Family has asserted additional exclusions outside of the three for which there is no clear Indiana precedent, the resolution of the certified questions by the Indiana Supreme Court would not determine the case. There would remain genuine issues of material fact as to whether additional exclusions would apply. Thus, the undersigned decided the issues as the court believes Indiana's Supreme Court would in accordance with *Erie.*

molested by her babysitter's husband. 690 N.E.2d at 676. The victim and her mother pursued a civil battery claim against the molester. Neither the babysitter, White, nor her husband officially notified their homeowners's carrier, Frankenmuth, of the claim, although Frankenmuth was generally aware of the litigation and sent a reservation of rights letter. Frankenmuth sent a letter to the attorney who represented the babysitter and her husband, indicating that there was no coverage afforded for damages resulting from the molestation of a child and requesting copies of the lawsuit filings so that it could determine if it had a duty to defend. Frankenmuth refused to defend White and eventually she entered into a consent judgment with the plaintiff. The Plaintiff's attorney then sought to execute a judgment against Frankenmuth pursuant to the Homeowner's policy.

Frankenmuth moved for summary judgment arguing, among other things, that the claim was excluded from the policy because the injuries had resulted from the intentional acts committed by the babysitter's husband. *Frankenmuth,* 690 N.E.2d at 677. In response, the Indiana Supreme Court concluded:

> Frankenmuth's intentional act arguments are essentially an attempt to conflate the conduct of White with that of her husband in order to bring the consent judgment within the intentional act exclusion. The fundamental problem with this strategy is that [the plaintiff] never alleged that White engaged in any intentional conduct or participated in the molestation. [The plaintiff's] complaint accused White of only negligent supervision, which supposedly exposed [the plaintiff] to the risk that White's husband would molest [the plaintiff].

*Id.* at 678. The court went on to hold that intentional act exclusion does not apply to White's alleged negligence. Id.

Notably, *Frankenmuth* does not involve the sexual molestation or criminal acts exclusions and focuses solely on the intentional acts exclusion in that particular policy. However, American Family makes no argument that the fundamental principle relied upon by the Indiana Supreme

Court, i.e., that insurance policy exclusions that preclude coverage for intentional or illegal acts do not preclude coverage for the negligent actions of other insureds under the same policy, would not equally apply here. And, based upon the facts of this case and the holding in *Frankenmuth* the rationale applies equally to all three exclusions. Indeed, it would make little sense to delineate among the three exclusions where the underlying premise is identical in all three scenarios. Thus, this court holds that under Indiana law, the sexual molestation, the criminal law, or the intentional acts exclusions in American Family's policies do not apply to preclude coverage for the alleged negligent acts of a co-insured.

This court's conclusion is also not altered by American Family's contention that because the language in the criminal law and intentional acts exclusions bars coverage for criminal or intentional acts of "any insured" it bars coverage for innocent co-insured's such as the Bowers. American Family asserts that its exclusions are unambiguous and apply where "any insured" covered by the Policies commits an intentional or criminal act. Thus, it attempts, once again, to conflate Jonathan Bower's intentional conduct with the alleged negligence of his parents thereby foreclosing coverage and a duty to defend for the parents. American Family further contends that the existence of the severability provision is irrelevant because the intentional and criminal acts exclusions contain specific unambiguous language which disallows coverage.

This argument is similar to the one presented at the outset as to whether an "occurrence" to trigger coverage could be found and, as numerous courts have concluded, (see list *supra*), adopting American Family's reasoning in the confines of this case would make the severability provision superfluous. This is precisely the result the Indiana Court of Appeals sought to avoid in its holding in *Wayne Township*. The Policies provide that the insurance applies separately to each insured. Yet,

it then attempts to exclude from the coverage intentional or criminal acts by another insured. The Indiana Supreme Court in construing insurance policies has held that an insurance contract should be interpreted to harmonize the contract's provisions rather than place them in conflict. *Allgood v. Meridian Security Insurance Co.,* 836 N.E.2d 243 (Ind. 2005). Here, a reasonable insured would believe from the severability provision that their insurance coverage and any exclusion of coverage would be judged on the basis of their particular conduct and acts within their control. To then exclude coverage on the basis of another insured's conduct creates a conflict between the two provisions and denies the reasonable insured the coverage protection which the severability provision affords. Accordingly, this court believes that Indiana would follow the reasoning of those courts that hold that a severability clause providing for separate coverage to named insureds applies despite language in an exclusion applying to "any insured."

Accordingly, the court concludes that the sexual molestation, criminal acts, and intentional acts exclusions do not apply to preclude coverage under the Policies to the Bowers for their alleged negligence. American Family's Motion for Summary Judgment on this issue is therefore DENIED.

## B. Intra-Insured Exclusion

In her state court complaint, Butler alleges that the Bowers stood "in loco parentis" to her during the period in which she was sexually molested by Jonathan. *In loco parentis* means "in the place of a parent." Black's Law Dictionary 803 (8th ed.2004). The doctrine generally "refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties." *In re M.W.,* 913 N.E.2d 784, 788 (Ind.App., 2009) (quoting *Niewiadomski v. United States,* 159 F.2d 683,

686 (6th Cir.1947).

As a result of the allegation that the Bowers were "stand-in" parents for Butler, American Family asserts that it has no duty to defend because the Policies exclude coverage for bodily injury to any insured. (Policy Exclusions #11, p. 11). This provision seeks to exclude coverage for bodily injury between insureds. The Policies further define "insured" as follows:

> a. **Insured** means **you** and, if residents of **your** household:
> (1) **your** relatives; and
> (2) any other person under the age of 21 in your care or in the care of **your** resident relatives

(Policy, p. 1). According to American Family's analysis, because Butler has sued under the theory of "in loco parentis," she qualifies as an additional insured and the intra-insured exclusion bars coverage.

Oddly, however, both American Family and the Bowers agree that although the state court complaint alleges that Butler was "in loco parentis," the evidence does not support such a finding. In its reply brief American Family writes:

> Plaintiff American Family and Defendants Michael and Anne Bower are in agreement that Michael and Anne Bower did not assume parental duties as to Defendant Gabriel Butler under the facts of this case. Plaintiff American Family also agrees that in order for the intra-insured exclusion in the American Family homeowners policies to apply to Gabrielle Butler, she would have to be considered a resident of the Bower household during the times she was molested by Jonathan...American Family also agrees that it is unlikely that evidence in the underlying trial of this matter will establish that Gabrielle Butler was a resident of the Bower household during the times she was molested...For purposes of Plaintiff American Family's second motion for summary judgment, it will be assumed that there are questions of fact as to the issue of "in loco parentis" as raised in Defendant Gabrielle Butler's amended complaint in the underlying tort litigation.

(Reply, pp. 3-4).

American Family's position above acknowledges one of the basic obligations on insurers

when determining whether it will provide coverage and a defense to a particular claim.  Indeed, because "the duty to defend ... arises before all the facts can be determined at trial[,] an insurer [must] examine the allegations of the complaint and make a reasonably complete investigation of the facts [ ] before it can deny coverage and consequent defense." *Am. States Ins. Co. v. Aetna Life & Cas. Co.,* 177 Ind.App. 299, 379 N.E.2d 510, 518 (Ind.Ct.App.1978).  In turn, it is incumbent on the insured to present facts that indicate coverage.  In this case, American Family appears to concede that there are disputed facts which are indicative of the coverage issue thereby making summary judgment on whether the exclusion applies impossible at this stage.  Accordingly, American Family's Second Motion for Summary Judgment is DENIED as to the issue of whether the intra-insured exclusion bars coverage in this case.

### C.  Coverage for the Church on Fire, Business Pursuits Exclusion, Professional Liability Exclusions

Next, American Family seeks summary judgment on the issue of whether it owes a duty to defend Michael Bower in his capacity as the Pastor of The Church on Fire based on Count V of Butler's state law complaint.  In Count V, Butler alleges as follows:

> 13.     That the Defendant Church and its Pastor, Defendant Michael Bower, had duties to its members, and specifically to the minor Plaintiff herein...
>
> 14.     That the Defendants, the Church and Michael Bower, knowing Jonathan Bower's history and predilections, were negligent in the supervision, hiring, and retention of Jonathan Bower, II.

From these allegations, Butler seeks to hold the Church and Michael Bower accountable for acts that occurred at the Church.

According to American Family, the Policies at issue here cover only acts that occurred on

the insured premises. Since it is undisputed in this case that the Church on Fire was not the insured premises, American Family asserts it has no obligation to defend Michael Bower for acts that occurred on the church premises. It further argues that to the extent that Butler contends that Michael Bower was negligent as the Pastor of the Church on Fire while acts of molestation was ongoing there, no coverage exists under the homeowners policies because of the Business Pursuits and Professional Liability exclusions in those policies:

> 4. **Business.** We will not cover **bodily injury** or **property damage** arising out of business pursuits or the rental or holding for rental of any part of any premises except:

> a. activities which are normally considered non-**business**

\*\*\*

> 15. **Professional Liability.** We will not cover **bodily injury** or **property damage** arising out of the rendering or failing to render professional services.

(Policies, p. 11).

In response, the Bowers assert that there are genuine issues of material fact as to whether these two exclusions can be applied to the facts of this case. According to them, there is absolutely no evidence that acts of molestation for which Butler seeks to hold the Church and Michael Bower as Pastor accountable occurred on the Church premises or whilst Michael Bower was acting as Pastor of the Church. Thus, if all the acts of molestation occurred at the insured premises, the Bowers argue that neither of the above exclusions can apply since Michael Bower was not rendering any professional services at the insured premises.

Again, the court is faced with the same basic tenet behind an insurer's duty to defend, i.e., that is the duty to examine the complaint and investigate the facts. Having said this, the court agrees with American Family that to the extent Butler is seeking to hold Michael Bower liable as Pastor

of the Church on Fire for acts of molestation that occurred there, it would be entitled to summary judgment based upon the business pursuits and professional liability exclusions. However, as the Bowers point out, the facts in the underlying tort litigation suggest that no acts of molestation occurred at the Church while Michael Bower was employed as its Pastor and thus, the two exclusions are inapplicable to the claim against the Bowers. Thus, there exists a genuine issue of material fact as to whether the exclusions sought to be employed by American Family are applicable to preclude a defense. Thus, American Family's Second Motion for Summary judgment is DENIED as to application of the two business related exclusion but GRANTED as to whether the Church on Fire is covered as an insured under the Policies.

### D.   **Punitive Damages Exclusion**

American Family contends that it is entitled to summary judgment as to whether the Policies cover punitive or exemplary damages. The Policies clearly provide that they do not cover "punitive or exemplary damages." (Policies, p. 12). In their response brief, the Bowers do not address American Family's argument that the Policies clearly exclude punitive damages. Accordingly, based upon the plain language of the Policies, American Family is entitled to summary judgment on this issue. American Family's Second Motion for Summary Judgment is GRANTED as to the claim that the Policies exclude claims for punitive damages against the Bowers.

### **Conclusion**

Based on the foregoing, American Family's Second Motion for Summary Judgment [DE 83] is GRANTED in part and DENIED in part as set out herein. Consistent with this Order, the court hereby DECLARES as follows:

Plaintiff American Family's homeowner's policies provide coverage to Defendants Michael and Anne Bower for the "occurrences" involving Jonathan L. Bower, II alleged to

have caused bodily injury to Defendant Gabrielle L. Butler on the insured premises, subject to any applicable exclusions.

Plaintiff American Family owes a duty to defend Defendants Michael and Anne Bower for the "occurrences" involving Jonathan L. Bower, II alleged to have caused bodily injury to Defendant Gabrielle L. Butler on the insured premises, subject to any applicable exclusions.

Plaintiff American Family's homeowner's policies exclusions of coverage for acts of sexual molestation, intentional acts, or criminal acts do not exclude coverage for the negligent acts of a co-insured.

Plaintiff American Family's homeowners policies exclude coverage for punitive damages claimed in the underlying litigation.

Plaintiff American Family does not owe any coverage to Defendant The Church on Fire under the Policies for the events involving Jonathan L. Bower, II alleged to have caused bodily injury to Defendant Gabrielle L. Butler on the premises of The Church on Fire.

Plaintiff American Family does not owe a duty to defend The Church on Fire for the claims allegedly arising out of the sexual molestation of Defendant Gabrielle Butler on the premises of the Church on Fire.

The remainder of the issues in American Family's Motion for Summary Judgment require the resolution of genuine issues of material fact. Summary judgment is therefore DENIED as to those issues.

Entered: November 5, 2010

s/ William C. Lee
United States District Court